UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'

| Case No. | 2:14-cv-02036-CAS(SHx) | Date | July 7, 2014 |
|---|---|---|---|
| Title | DEAKINS HOLDING PTE LIMITED ET AL. V. NEWNET INVESTMENT GROUP LLC ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Stacy Harrison<br>David Fuad | Jeffrey Goldman<br>Matthew Adler |

**Proceedings:**     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. #32, filed May 23, 2014)

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Dkt. #36, filed June 9, 2014)

## I. INTRODUCTION

Plaintiffs Deakins Holding PTE Limited, Cristian Moga, C. Manda Holding B.V. and Sebastian Liusnea filed this action on March 17, 2014, against defendants NewNet Investment Group, LLC and NewNet Holdings, LLC. Dkt. #1. The complaint asserts two claims for breach of contract, one against NewNet Investment, and one against NewNet Holdings. Id. The claims arise out of a dispute as to the correct interpretation of a stock purchase agreement (the "Agreement") entered into by plaintiffs, defendants, and an entity known as 3ple-Media, B.V. ("3ple"). Pursuant to the Agreement, plaintiffs transferred their stake in 3ple to defendants, in exchange for a series of payments. The parties disagree about the Agreement's terms governing the calculation of the amount and breakdown of one of the payments, defined in the Agreement as the "Earnout Amount."

Defendants filed a motion for summary judgment on May 23, 2014. Dkt. #32. Plaintiffs filed an opposition on June 16, 2014, dkt. #44, and defendants replied on June 23, 2014, dkt. #51. On June 9, 2014, plaintiffs also filed a motion for summary judgment. Dkt. #36. Defendants filed an opposition on June 16, 2014, dkt. #43, and plaintiffs replied on June 23, 2014, dkt. #52. The Court held a hearing on July 7, 2014. After considering the parties' arguments, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:14-cv-02036-CAS(SHx) | Date | July 7, 2014 |
|---|---|---|---|
| Title | DEAKINS HOLDING PTE LIMITED ET AL. V. NEWNET INVESTMENT GROUP LLC ET AL. | | |

## II. BACKGROUND

Most of the relevant facts are not in dispute. On September 25, 2010, plaintiffs, defendants, and 3ple entered into a stock purchase agreement (the "Agreement"). Plaintiffs' Statement of Uncontroverted Material Facts ("PSUMF") ¶ 1; Defendants' Statement of Genuine Disputes ("DSGD") ¶ 1. The Agreement provides that it shall be "governed, construed an interpreted in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law." Defendants' Statement of Uncontroverted Material Facts ("DSUMF") ¶ 20; Plaintiffs' Statement of Genuine Disputes ("PSGD") ¶ 20. The Agreement also includes an integration clause, which provides that "[t]his Agreement (including the documents and instruments referred to herein) (a) constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof." DSUMF ¶ 21; PSGD ¶ 21.

In accordance with the Agreement, plaintiffs sold and transferred all of their percentage shares in 3ple-Media to NewNet Holdings. DSUMF ¶ 2; PSGD ¶ 2. The Agreement requires NewNet Holdings to make a series of installment payments to plaintiffs, in consideration for plaintiffs' transfer of their shares in 3ple. DSUMF ¶ 4; PSGD ¶ 4. The Agreement provides for an initial payment of $2 million, followed by a second payment of $1.5 million, and a third payment of $1 million. DSUMF ¶¶ 5-7; DSUMF ¶¶ 5-7.

The Agreement also provides for the payment of an "Earnout Amount, if any, as determined in accordance with Section 1.4" of the Agreement. DSUMF ¶ 8; PSGD ¶ 8. Section 1.4 of the Agreement states the following:

> "[NewNet Holdings] shall pay to [Plaintiffs] an amount (the "Earnout Amount"), which shall not exceed Three Million Dollars ($3,000,000), equal to: Twenty per cent of the difference between the Revenues of the Earnout Period and the Earnout Threshold. In the event such amount is less than One Million Five Hundred Thousand Dollars ($1,500,000), [NewNet Holdings] shall pay an additional amount equal to the difference between (i) One Million Five Hundred Thousand Dollars ($1,500,000) and (ii) twenty per cent of the difference between the Revenues of the Earnout Period and the Earnout

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-02036-CAS(SHx) | Date | July 7, 2014 |
| Title | DEAKINS HOLDING PTE LIMITED ET AL. V. NEWNET INVESTMENT GROUP LLC ET AL. | | |

Threshold (the "Additional Amount"). [NewNet Holdings] shall elect to pay the Additional Amount in either cash or common stock issued by [NewNet Holdings]."

DSUMF ¶ 10; PSGD ¶ 10.[1]  Defendants do not dispute that the Agreement provides that defendants shall pay the Earnout Amount to plaintiffs "no later than on the Earnout Payment Date," as defined by the Agreement. PSUMF ¶ 4; DSGD ¶ 4. The Agreement provides that the term "Earnout Threshold" means $5 million. DSUMF ¶ 13; PSGD ¶ 13. Additionally, the parties do not dispute that 3ple's revenues during the Earnout Period are $1,928,784. PSUMF ¶ 8; DSGD ¶ 8. However, the basis for this action is that the parties dispute whether an Earnout Amount is due under the Agreement when 3ple's revenues during the Earnout Period are less than $5 million. See PSUMF ¶ 10; DSGD ¶ 10.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

---

[1] "Revenues" refers to the revenues of 3ple. See Agreement at 18; see also id. § 1.4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-02036-CAS(SHx) | Date | July 7, 2014 |
| Title | DEAKINS HOLDING PTE LIMITED ET AL. V. NEWNET INVESTMENT GROUP LLC ET AL. | | |

bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

### A. Choice of Law

"Federal courts sitting in diversity jurisdiction look to the law of the forum state in choice-of-law determinations." Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005). "California choice-of-law rules . . . reflect strong policy considerations favoring the enforcement of freely negotiated choice-of-law clauses in contracts." Id. (quoting Nedlloyd Lines B.V. v. Sup. Ct., 3 Cal. 4th 459, 462 (1992)). Here, the Agreement contains a choice-of-law provision stating that its interpretation should be governed by New York law. Agreement § 9.7. Moreover, the parties agree that this provision should be given effect. See Pls. Mot. Summ. J. at 5-6; Defs. Mot. Summ. J. at 9-11. Based on the parties' agreement, and California's policy favoring the enforcement of freely negotiated choice-of-law clauses, the Court concludes that New York law governs the interpretation of the Agreement.

### B. Interpretation of the Agreement Under New York Law

Under New York law, a trial court's "primary objective [in interpreting a contract] is to give effect to the intent of the parties as revealed by the language they chose to use" Seiden Assocs. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992) (citing Slatt v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-02036-CAS(SHx) | Date | July 7, 2014 |
| Title | DEAKINS HOLDING PTE LIMITED ET AL. V. NEWNET INVESTMENT GROUP LLC ET AL. | | |

Slatt, 477 N.E.2d 1099 (N.Y. 1985)). "Summary judgment is only proper in contract disputes if the language of the contract is 'wholly unambiguous.'" Mellon Bank, N.A. v. United Bank Corp., 31 F.3d 113, 115 (2d Cir. 1994). Contract language is unambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." Hunt Ltd. v. Lifschultz Fast Freigh, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989) (quoting Breed v. Ins. Co. of N. Am., 385 N.E.2d 1280, 1282 (N.Y. 1978)). By contrast, contractual language is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." Collins v. Harrison-Bode, 303 F.3d 429, 433 (2d Cir. 2002). Whether contract language is unambiguous is a legal question, to be resolved by the court. Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1094 (2d Cir. 1993). In determining whether contract language is ambiguous, the court must view that language "in the context of the entire agreement." WWW. Assocs. v. Giancontieri, 556 N.E.2d 639, 642 (N.Y. 1990).

"In interpreting an unambiguous contract, the court is . . . not to consider any extrinsic evidence as to the parties' intentions." JA Apparel Corp. v. Abboud, 568 F.3d 390, 397 (2d Cir. 2009). However, if the language is ambiguous, "extrinsic evidence as to the parties' intent may properly be considered." Id. Even after the introduction of extrinsic evidence, a court may "resolve the ambiguity in the contractual language as a matter of law if there is no extrinsic evidence to support one party's interpretation of the ambiguous language or if the extrinsic evidence is so one-sided that no reasonably factfinder could decide contrary to one party's interpretation." Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc., 232 F.3d 153, 159 (2d Cir. 2000).

Plaintiffs contend that the Agreement is unambiguous and that it plainly shows that an Earnout Amount is due, in the minimum amount of $1.5 million, regardless of whether 3ple's revenues during the Earnout Period are less than, equal to, or greater than the Earnout Threshold of $5 million. Thus, according to plaintiffs, defendants breached the Agreement by failing to pay plaintiffs an Earnout Amount of $1.5 million. By contrast, defendants contend that the Agreement unambiguously states that an Earnout Amount only becomes due if revenues during the Earnout Period meet or exceed the Earnout Threshold of $5 million. Accordingly, defendants contend that no Earnout Amount is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-02036-CAS(SHx) | Date | July 7, 2014 |
|---|---|---|---|
| Title | DEAKINS HOLDING PTE LIMITED ET AL. V. NEWNET INVESTMENT GROUP LLC ET AL. | | |

due under the Agreement, because it is undisputed that 3ple's revenues during the Earnout Period totaled $1,928,784.

      The Court concludes that the Agreement is ambiguous as to whether an Earnout Amount is due if revenues during the Earnout Period are less than $5 million because both parties' interpretations find some support in the language of the Agreement. The following hypothetical, in which revenues during the Earnout Period total $1 million, sets forth plaintiffs' interpretation. In this scenario, the Earnout Amount would be calculated as follows, according to a literal interpretation of Section 1.4(b)(i) of the Agreement: First, the difference between "Revenues of the Earnout Period" (here, $1 million) and the Earnout Threshold ($5 million), would be $4 million. Agreement § 1.4(b)(i). Twenty percent of that number is $800,000. The parties do not appear to dispute that this amount is payable only in cash.[2] Then, according to plaintiffs, an "Additional Amount" is also due, equal to the difference between $1.5 million and $800,000, id., which comes to $700,000. The Additional Amount is payable "either in cash or in common stock." Id. Thus, if revenues during the Earnout Period are $1 million, then, according to plaintiffs, they are entitled to a payment of $800,000 in cash and $700,000 in cash or common stock. Likewise, if revenues during the Earnout Period are $9 million, then the difference between "Revenues of the Earnout Period" (here, $9 million) and the Earnout Threshold ($5 million), would be $4 million. Agreement § 1.4(b)(i). Twenty percent of that number is $800,000. As above, an Additional Amount becomes due, equal to the difference between $1.5 million and $800,000, which amounts to $700,000. Thus, if revenues during the Earnout Period are $9 million, then, according to plaintiffs, they are entitled to a payment of $800,000 in cash and $700,000 in cash or common stock, the exact same amount and cash versus stock mix as when Revenues of the Earnout Period were $1 million. Accordingly, as evidenced by these examples, a literal reading of Section 1.4(b)(i) results in an Earnout Amount becoming due, in the amount of $1.5 million, regardless of whether the revenues of the Earnout Period exceed $5 million.

      Defendants resist this conclusion, arguing that, under plaintiffs' interpretation, the Earnout Amount is a negative number when Earnout Period revenues are less than the

---

    [2] While the parties do not appear to dispute that the Agreement so provides, it is not apparent to the Court where this provision can be found in the Agreement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       'O'

| Case No. | 2:14-cv-02036-CAS(SHx) | Date | July 7, 2014 |
|---|---|---|---|
| Title | DEAKINS HOLDING PTE LIMITED ET AL. V. NEWNET INVESTMENT GROUP LLC ET AL. | | |

Earnout Threshold. Specifically, defendants contend that if revenues are $1 million, then the "difference between the Revenues of the Earnout Period and the Earnout Threshold" is calculated by performing the following operation: $1,000,000–$5,000,000 = –4,000,000. However, nothing in Section 1.4(b)(i) states that, when calculating the difference between two numbers, the larger number comes first. Thus, when Section 1.4(b)(i) provides that the Earnout Amount equals "[t]wenty percent of the difference between the Revenues of the Earnout Period and the Earnout Threshold," nothing in the Agreement states that this calculation must be performed as [Revenues of Earnout Period] – [Earnout Threshold]. Rather, the calculation could also be performed as [Earnout Threshold] – [Revenues of the Earnout Period], which results in a positive number when revenues are less than $5 million.[3]

      Additionally, plaintiffs provide a letter dated July 30, 2010 ("Letter of Intent"), which, according to them, demonstrates that the parties intended for an Earnout Amount to become due regardless of whether revenues during the Earnout Period exceed $5 million. Pls. Mot. Summ. J., Foresta Decl. Ex. H. Plaintiffs cite the following language in the Letter of Intent in support of their argument:

> If no Earn-Out level is achieved, or the parties are unable to agree on a mutually acceptable performance metric, [Defendants] will structure a final note (Third Note) equal to $1.5 million, of which [Defendants] would maintain the exclusive right to either pay in cash or convert into equivalent Stock ownership.

---

[3] The ambiguity of the Agreement is further compounded by the fact that Section 1.4(b)(i) of the Agreement provides that the purchaser "shall pay" an Earnout Amount, and makes no mention of the fact that this requirement is subject to any conditions, such as revenues of the Earnout Period exceeding $5 million.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-02036-CAS(SHx) | Date | July 7, 2014 |
| Title | DEAKINS HOLDING PTE LIMITED ET AL. V. NEWNET INVESTMENT GROUP LLC ET AL. | | |

Id. Plaintiffs contend that this statement in the Letter of Intent was incorporated into the Agreement in the form of Section 1.4(b)(i), and that Section 1.4(b)(i) should therefore be interpreted with reference to this statement.[4]

By contrast, defendants advance several arguments as to why their interpretation of the Agreement is correct. First, defendants argue that the Agreement contemplates the possibility that an Earnout Amount might never become due because the Agreement makes two references to the Earnout Amount, followed by the words "if any." For example, the Agreement states that the "total consideration to be paid by [Defendants] . . . shall be . . . the sum of . . . Two Million Dollars . . . *plus* . . . One Million Five Hundred Thousand Dollars . . . *plus* . . . One Million Dollars . . . plus . . . the Earnout Amount, if any, as determined in accordance with Section 1.4 below." Agreement § 1.2(b); see also Agreement § 8.3(a) (referring to "the Earnout Amount, if any, due or to become due to the Stockholders pursuant to this Agreement"). Defendants argue that the words "if any" show that the parties contemplated the possibility that an Earnout Amount might never become due. Defendants further argue that, under the interpretation urged by plaintiffs, the words "if any" are rendered superfluous. Thus, according to defendants, plaintiffs' interpretation runs afoul of the principle that New York law "disfavor[s] contract interpretations that render provisions of a contract superfluous." Int'l Multifoods Corp. v. Comm. Union Ins. Co., 309 F.3d 76, 86 (2d Cir. 2002); see also Garza v. Marine Transport Lines, Inc., 861 F.2d 23, 27 (2d Cir. 1988) (noting that "an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible").

Next, defendants argue that the plain meaning of the term "threshold" supports defendants' interpretation. See R/S Assocs. v. N.Y. Job Dev. Auth., 771 N.E.2d 240, 242 (N.Y. 2002) (referring to the Oxford English Dictionary of a term in reaching the conclusion that the term was unambiguous); Fed. Ins. Co. v. Am. Home Assurance Co., 639 F.3d 557, 567 (2d Cir. 2011) (noting that it is "common practice for the courts of

---

[4] Defendants object to the introduction of the Letter of Intent on the grounds that extrinsic evidence is inadmissible for the purpose of interpreting an integrated, unambiguous contract. As set forth below, the Court concludes that the Agreement is ambiguous. Accordingly. defendants' objection is OVERRULED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-02036-CAS(SHx) | Date | July 7, 2014 |
| Title | DEAKINS HOLDING PTE LIMITED ET AL. V. NEWNET INVESTMENT GROUP LLC ET AL. | | |

[New York] State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract"(quoting Empire Fire & Marine Ins. Co. v. Eveready Ins. Co., 851 N.Y.S. 2d 647, 648 (2008))). In particular, defendants note that the Merriam-Webster dictionary defines "threshold" as a "level, point, or value above which something is true or will take place and below which it is not or will not." Threshold Definition, Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/threshold (last visited June 27, 2014). Defendants therefore argue that this definition, taken together with the Agreement's definition of "Earnout Threshold" as "Five Million Dollars," supports their contention that revenues during the Earnout Period must exceed (or at least meet) $5 million before an Earnout becomes due.

The Court finds that the Agreement is ambiguous because, as evidenced by the arguments summarized above, the Agreement is "capable of more than one meaning when viewed objectively [in] . . . the context of the entire integrated agreement." Collins, 303 F.3d at 433. Accordingly, the Court concludes that it is appropriate to resort to extrinsic evidence of the parties' intent to resolve the ambiguity. See, e.g., JA Apparel Corp., 568 F.3d at 397. Plaintiffs state that, if given an opportunity to conduct discovery, they would seek to depose individuals named Christopher Aye and Gary Moon, and obtain "other evidence in support of [plaintiffs'] position, including prior drafts of the Agreement and the deposition testimony of the negotiators responsible for drafting Section 1.4(b)." Opp. Defs. Mot. Summ. J. at 16. At oral argument, the parties also briefly set forth what facts they would seek to elicit through discovery. Based on the parties' submissions and statements at oral argument, the Court concludes that the parties should be permitted the opportunity to discover extrinsic evidence that resolves the ambiguity in the Agreement. The parties are directed to meet and confer to establish an appropriate schedule for such discovery.

## V. CONCLUSION

In accordance with the foregoing, plaintiffs' motion for summary judgment is DENIED, and defendants' motion for summary judgment is also DENIED.

Additionally, the Court hereby sets a further hearing on **Monday, November 17, 2014**, at **10:00 am**. On or before **October 16, 2014**, the parties shall file simultaneous opening briefs, not to exceed fifteen (15) pages, summarizing the evidence obtained

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL  'O'

| Case No. | 2:14-cv-02036-CAS(SHx) | Date | July 7, 2014 |
|---|---|---|---|
| Title | DEAKINS HOLDING PTE LIMITED ET AL. V. NEWNET INVESTMENT GROUP LLC ET AL. | | |

during discovery. The parties shall also have leave to file reply briefs on or before **October 23, 2014**. The reply briefs shall not exceed five (5) pages.

Furthermore, the Court continues the Scheduling Conference from August 11, 2014 to **November 17, 2014**, at **10:00 A.M.** A Joint Report shall be filed on or before November 10, 2014.

IT IS SO ORDERED.

|  |  | 00 | : | 13 |
|---|---|---|---|---|
|  | Initials of Preparer |  | CMJ |  |